# United States Tax Court

163 T.C. No. 5

BRUCE E. MCDOUGALL, DONOR, ET AL.,[1]
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos.  2458-22, 2459-22,            Filed September 17, 2024.
2460-22.

————

Upon D's death in 2011, the residuary of her estate passed, under the terms of her will, to a trust (Residuary Trust) in which S, her husband, had an income interest and their two children (C1 and C2) had remainder interests. S, as representative of D's estate, elected under I.R.C. § 2056(b)(7) to treat the Residuary Trust property as qualified terminable interest property. In 2016, S, C1, and C2 entered into an agreement under which the Residuary Trust was commuted and all its assets were distributed to S. S promptly sold some of the assets he received from the Residuary Trust to other trusts established for the benefit of C1 and C2 and their children, in exchange for promissory notes.

S, C1, and C2 separately filed gift tax returns for 2016 and reported that the transactions described above resulted in offsetting reciprocal gifts and no gift tax.

R examined the gift tax returns and issued a Notice of Deficiency to each of S, C1, and C2 determining that (1) the commutation of the Residuary Trust resulted in

———————
[1] Cases of the following petitioners are consolidated herewith: Linda M. Lewis, Donor, Docket No. 2459-22; and Peter F. McDougall, Donor, Docket No. 2460-22.

gifts from S to C1 and C2 under I.R.C. § 2519 and (2) the agreement resulted in gifts from C1 and C2 to S of the remainder interests in the Residuary Trust under I.R.C. § 2511. Timely Petitions for redetermination of the deficiencies followed.

S, C1, and C2 filed a Motion for Summary Judgment seeking a ruling that no taxable gifts occurred under the transactions described above. R filed a Motion for Partial Summary Judgment seeking rulings that (1) the agreement to commute the Residuary Trust was a disposition of S's qualifying income interest pursuant to I.R.C. § 2519 and resulted in gift tax liability for S, (2) the agreement to commute the Residuary Trust resulted in gifts to S by C1 and C2 under I.R.C. § 2511, and (3) S's deemed gift under I.R.C. § 2519 and C1's and C2's gifts to S are not offsetting reciprocal gifts. In the alternative to ruling (1), R requests a ruling that the commutation coupled with the transfer of the Residuary Trust property in exchange for promissory notes is a disposition of S's qualifying income interest under I.R.C. § 2519 and resulted in gift tax liability for S.

*Held*: The consequences of the transactions here are governed by the principles set out in *Estate of Anenberg v. Commissioner*, No. 856-21, 162 T.C. (May 20, 2024) (reviewed).

*Held, further*, following *Estate of Anenberg*, assuming there was a transfer of property under I.R.C. § 2519 when the Residuary Trust was commuted, S is not liable for gift tax under I.R.C. § 2501 because S made no gratuitous transfers, as required by I.R.C. § 2501.

*Held, further*, following *Estate of Anenberg*, the commutation of the Residuary Trust coupled with the transfer of the Residuary Trust property in exchange for promissory notes did not result in gifts from S to C1 and C2.

*Held, further*, the agreement to commute the Residuary Trust resulted in gifts to S by C1 and C2 under I.R.C. § 2511.

*Held, further*, Ps' Motion for Summary Judgment will be granted in part and denied in part.

*Held, further*, R's Motion for Partial Summary Judgment will be granted in part and denied in part.

————————

*John W. Porter*, *Keri D. Brown*, and *Tyler R. Murray*, for petitioners.

*Amy Chang*, *Hannah E. Linsenmayer*, *Melanie E. Senick*, and *Melissa D. Lang*, for respondent.

OPINION

TORO, *Judge*:  In these gift tax cases, we return to a subject we considered only a few months ago:  the qualified terminable interest property (QTIP) regime.  *See Estate of Anenberg v. Commissioner*, No. 856-21, 162 T.C. (May 20, 2024) (reviewed).  As in *Estate of Anenberg*, we address the gift tax implications of (1) the termination of a QTIP marital trust (Residuary Trust), (2) the distribution of all the assets of the Residuary Trust to the surviving spouse pursuant to a nonjudicial agreement among the surviving spouse and his children who held remainder interests in the Residuary Trust, and (3) the subsequent sale of substantially all of those assets by the surviving spouse to trusts for the benefit of the children in exchange for promissory notes.  Also as in *Estate of Anenberg*, we must decide whether the surviving spouse made gifts as a result of these transactions.  In addition, we must decide whether the children's transfers of their remainder interests to the surviving spouse were gifts, a question we specifically left open in *Estate of Anenberg*.

Now before us are a Motion for Summary Judgment filed by petitioners, Bruce E. McDougall (Bruce), Linda M. Lewis (Linda), and Peter F. McDougall (Peter), and a Motion for Partial Summary Judgment filed by the Commissioner of Internal Revenue.  Applying the principles set out in *Estate of Anenberg*, we conclude that Bruce (the surviving spouse) made no gifts, but that Linda and Peter (his children) did so.  Accordingly, we will grant each Motion in part and deny each in part.

*Background*

The following facts are derived from the parties' pleadings, Motion papers, the Stipulation of Facts, and the attached Exhibits. They are stated solely for the purpose of ruling on the Motions before us and not as findings of fact in these cases. *See Rowen v. Commissioner*, 156 T.C. 101, 103 (2021) (reviewed).

Clotilde McDougall died in December 2011, survived by her husband Bruce and their two adult children, Linda and Peter. At that time, Clotilde's gross estate was valued at $59.76 million. Bruce served as personal representative of Clotilde's estate.

Under her will, Clotilde left the residue of her estate to the Residuary Trust. Bruce was the trustee of the Residuary Trust.

The will provided for the distribution to Bruce, at least annually, of the Residuary Trust's net income. It also allowed the trustee to distribute principal to Bruce, in the trustee's discretion, "to provide for [Bruce's] health, maintenance and support in his accustomed manner of living." Stipulation of Facts Ex. 1-J, at ¶ 5.1.2.

The will granted Bruce a testamentary limited power to appoint the principal of the Residuary Trust "to or among [Clotilde's] descendants, equally or unequally, outright or in trust, on such terms and in such amounts as he shall determine." Stipulation of Facts Ex. 1-J, at ¶ 5.3. Upon Bruce's death, to the extent that he did not exercise his power of appointment, the remainder of the Residuary Trust was to be divided "into equal shares, one share for each of [Clotilde's] children who is then living and one share for each of [her] children who is then deceased with descendants then living." Stipulation of Facts Ex. 1-J, at ¶ 6.2.

Clotilde's will provided that, upon the termination of any trust created under the will, the trustee was to distribute the trust assets among its beneficiaries. The distributions did not have to be pro rata, "so long as the distributees receive assets of a value equal to the value of their respective interest in the trust as of the time of distribution." Stipulation of Facts Ex. 1-J, at ¶ 12.8.

The parties stipulated that Bruce, as personal representative of Clotilde's estate, "made a qualified terminable interest property (QTIP) election . . . with respect to the property that funded the Residuary

Trust." As a result, Clotilde's estate claimed a marital deduction of about $54 million.

By 2016, the value of the assets in the Residuary Trust had more than doubled, and Bruce, Linda, and Peter agreed that those assets could be more effectively used if Bruce held them outright and free of trust. In October 2016, Bruce, Linda, and Peter entered into an agreement concerning the Residuary Trust assets (Nonjudicial Agreement). Section 2 of the Nonjudicial Agreement provides: "The parties hereby agree that the Trust shall be commuted and the entire remaining balance of the Trust shall be distributed outright and free of trust to Bruce." Stipulation of Facts Ex. 3-J, at 4.

Section 3 of the Nonjudicial Agreement provides:

By signing this Agreement and by virtue of the QTIP election for the [Residuary] Trust, the commutation of the Trust results in a deemed gift, for federal gift tax purposes, of the remainder interest in the Trust assets from Bruce to Linda and Peter under Section 2519 of the Code. By virtue of the distribution of all of the Trust assets to Bruce, the commutation of the Trust does not result in a deemed gift of Bruce's income interest in the Trust under Section 2511 of the Code. Additionally, by signing this Agreement and by virtue of the distribution of all of the Trust asset [sic] to Bruce, the commutation of the Trust results in a gift, for federal gift tax purposes, of the remainder interest in the Trust from Linda and Peter to Bruce. The deemed gift of the remainder interest from Bruce to Linda and Peter and the gift from Linda and Peter to Bruce results in a reciprocal gift transfer.

Stipulation of Facts Ex. 3-J, at 4.

On the same day that the last of the parties signed the Nonjudicial Agreement, Bruce transferred assets he received from the Residuary Trust to trusts established for the benefit of Linda, Peter, and their descendants (Children's Trusts). In exchange, Bruce received promissory notes.[2]

---

[2] The parties disagree about some of the details of Bruce's transfers to the Children's Trusts. For example, petitioners claim that the principal amount of the

Bruce, Linda, and Peter each filed a 2016 Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return. Each return includes an explanatory statement that describes the taxpayer's view of the transactions effected by section 2 of the Nonjudicial Agreement. Each statement accepts that the commutation of the Residuary Trust resulted in a disposition under section 2519(a)[3] of Bruce's qualifying income interest in the trust with the consequence that he was treated as having transferred to Linda and Peter the remainder interest in the trust. But each statement also advances the position that no taxable gifts resulted because Bruce's deemed transfers were offset by transfers of the same assets back to him by Linda and Peter. For example, like section 3 of the Nonjudicial Agreement, Bruce's Form 709 states:

> Under IRC Section 2519 (a) [sic], the commutation of the Trust results in a deemed gift for federal gift tax purposes of the remainder interest in the Trust assets . . . from Taxpayer [Bruce] to Daughter [Linda] and Son [Peter]. . . . Further, by the non-judicial agreement to distribute all assets to Taxpayer there is a transfer of the remainder interest from Daughter and Son to Taxpayer. Accordingly, the deemed gift of the remainder interest by Taxpayer to Daughter and Son, and the transfer of the same assets from Daughter and Son to Taxpayer results in a reciprocal gift transfer.

Stipulation of Facts Ex. 4-J, at 329.

---

notes Bruce received equaled the value of the assets he transferred to the Children's Trusts. The Commissioner disputes that those transfers "were for adequate and full consideration." Resp't's Obj. to Pet'r's Mot. for Summ. J. (Resp't's Obj.) 12 n.20. In addition, the Commissioner contends that Bruce did not transfer to the Children's Trusts all the assets he received from the Residuary Trust. The Commissioner claims that "the record is devoid of facts as to what occurred with the other assets of the Residuary . . . Trust." Resp't's Obj. 13. He accepts, however, that Bruce transferred to the Children's Trusts "substantially all" the assets he received from the Residuary Trust. The disputed details concerning Bruce's transfers to the Children's Trusts are not material to the issues addressed in this Opinion.

[3] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C. or Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

Linda's and Peter's Forms 709 include statements that are identical except for the use of different labels (Father, Sister, Brother) for the parties.

In separate Notices of Deficiency issued on the same date, the Commissioner determined a deficiency in the gift tax liability of each of Bruce, Linda, and Peter for 2016. The Notice of Deficiency issued to Bruce stated the Commissioner's determination that the commutation of the Residuary Trust "resulted in a gift from the Taxpayer to the remainder beneficiaries under Internal Revenue Code sec. 2519." The Notices of Deficiency issued to Linda and Peter each stated the Commissioner's determination that the distribution to Bruce of all the property of the Residuary Trust "constitutes a transfer of the remainder interest in the . . . Trust and a gift by the remainder beneficiaries under Internal Revenue Code sec. 2511." Stipulation of Facts Ex. 8-J, at 9; *id.* Ex. 9-J, at 9.

Bruce, Linda, and Peter all filed timely Petitions with our Court for redetermination of the gift tax liabilities. They resided in the State of Washington at the time.

The Commissioner has moved for partial summary judgment seeking rulings that (1) "the October 31, 2016 Nonjudicial Agreement to commute and terminate the . . . Residuary Trust . . . was a disposition of [Bruce's] qualifying income interest pursuant to section 2519," (2) "the distribution of all trust property to Bruce pursuant to the October 31, 2016 Nonjudicial Agreement to commute and terminate the Residuary . . . Trust were gifts pursuant to section 2511 to Bruce by [Linda] and [Peter] each of their right to receive a pro rata share of the assets allocable to the[ir] remainder interest," and (3) "Bruce's deemed gift pursuant to section 2519 and Linda's and Peter's gifts to Bruce . . . do not constitute offsetting consideration for each other, and as such are not offsetting reciprocal gifts." Resp't's Mem. in Supp. of Mot. for Partial Summ. J. (Resp't's Mem.) 1–2. In the alternative to ruling (1), the Commissioner requests a ruling that "the October 31, 2016 Nonjudicial Agreement to commute and terminate the Residuary . . . Trust and distribute all trust property to Bruce coupled with Bruce's immediate transfer of substantially all the Residuary . . . Trust property to irrevocable trusts for the benefit of Linda and Peter and their descendants in exchange for promissory notes is a disposition of Bruce's qualifying income interest pursuant to section 2519." Resp't's Mem. 2.

Bruce, Linda, and Peter have moved for summary judgment "that no taxable gifts occurred and that no gift tax deficiencies exist." Pet'r's Mot. for Summ. J. 4.

## *Discussion*

### I. *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the adverse party. *Sundstrand Corp.*, 98 T.C. at 520. The parties agree that summary adjudication is appropriate here.

### II. *General Legal Principles: The Marital Deduction, the QTIP Regime, and the Gift Tax Rules*

Our opinion in *Estate of Anenberg* sets out an extensive discussion of the marital deduction available for estate tax purposes, the QTIP regime, and the QTIP regime's interaction with the gift tax rules. *Estate of Anenberg*, 162 T.C., slip op. at 8–12. We see no need to repeat that discussion here and turn instead to considering how the principles laid out in *Estate of Anenberg* apply to the circumstances now before us.[4]

### III. *Application of* Estate of Anenberg

#### A. *Lessons from* Estate of Anenberg

In *Estate of Anenberg*, 162 T.C., slip op. at 4, we faced the question "what happens when taxpayers subject to the QTIP regime take steps to conform their actual legal arrangements to the regime's legal fiction?" As we explained, the cross-motions for partial summary judgment there addressed the treatment of interests in property designated to be treated as QTIP when Alvin Anenberg (Alvin), the husband of Sally J. Anenberg (Sally), passed away. *Id.* The underlying property was held

---

[4] In Part IV.A below, we address certain arguments about the scope of the QTIP fiction that we had no occasion to consider in *Estate of Anenberg*.

in trust. *Id.* Following Alvin's death, Sally obtained a qualifying income interest for life, and, upon her death, the remainder interests in the corpus would contingently go to trusts for the benefit of Alvin's children. *Id.* Eventually, with the consent of both Alvin's children and Sally, the trusts holding the underlying property were terminated by a state court and all the property held by the trusts was distributed to Sally, putting her in the position she would have been in if all that property had originally passed from Alvin to her. *Id.* Sally later made gifts of and sold different pieces of the underlying property to Alvin's children and grandchildren. *Id.* Sally passed away, leaving the gift tax consequences of these transactions to be resolved by her estate. *Id.*

Sally's estate argued that the transactions just described did not result in any gift tax liability for Sally. The Commissioner disagreed, relying on section 2519. We sided with Sally's estate, concluding Sally made no gift.

We began by examining the text of section 2519. It provides that, "[f]or purposes of [the chapter imposing the gift tax] and [the chapter imposing the estate tax], any disposition of all or part of a qualifying income interest for life in any [QTIP] shall be treated as a transfer of all interests in such [QTIP] other than the qualifying income interest." I.R.C. § 2519(a). We read the Code to say that, "for gift and estate tax purposes, section 2519 treats any disposition of the surviving spouse's income interest in QTIP as if the surviving spouse transferred 100% of the remainder interests in QTIP." *Estate of Anenberg*, 162 T.C., slip op. at 11. We then assumed (without deciding) that the termination of the trusts through which Sally held her qualifying income interest in the QTIP and the distribution of the QTIP to Sally by order of the court was a disposition within the meaning of section 2519(a). *Id.*, slip op. at 13–14. But, as we observed,

> [a] transfer alone, however, is insufficient to create a gift tax liability. Rather, section 2501 tells us that gift tax applies "on the *transfer* of property *by gift* during [the] calendar year." I.R.C. § 2501(a)(1) (emphasis added); [*United States v.*] *Irvine*, 511 U.S. [224,] 232 [(1994)]; *see also Estate of Howard v. Commissioner*, 910 F.2d 633, 636 (9th Cir. 1990) (construing the provisions governing QTIPs and observing that "[i]n a statute so carefully crafted every difference counts"), *rev'g* 91 T.C. 329 (1988). And, as the Supreme Court observed in *Irvine*, "[w]e have repeatedly emphasized that [the Code's] comprehensive language was

chosen to embrace all *gratuitous* transfers." *Irvine*, 511 U.S. at 232–33 (emphasis added); *id.* at 235 ("[T]he capacious language of Internal Revenue Code §§ 2501(a)(1) and 2511(a) . . . encompasses all *gratuitous* transfers of property and property rights of significant value." (Emphasis added.)). In other words, a gratuitous transfer—not just a transfer—is required to impose gift tax.

*Id.*, slip op. at 14.

And, under the facts in *Estate of Anenberg*, no gratuitous transfer had occurred. As we noted:

To determine whether Sally made a gift, in connection with the deemed transfer, we compare what she had before and after the transaction. When doing so, we find that, after the transaction, Sally had full ownership of the [QTIP]. As a result of the Superior Court's order, she received free and clear the underlying property that section 2056(b)(7) deemed her to have received from Alvin to start with and with respect to which (we assume) section 2519(a) deemed her to have transferred remainder interests upon the termination of the Marital Trusts. Put another way, Sally's deemed transfer of the remainder interests in the [QTIP] held in trust (other than her qualifying income interest) resulted in her actual receipt of all the [QTIP] unencumbered (other than those attributable to her qualifying income interest). At the end of the day, she gave away nothing of value as a result of the deemed transfer. Accordingly, the termination of the Marital Trusts did not result in any "gratuitous transfers" by Sally, deemed or otherwise. *See Irvine*, 511 U.S. at 232. Because there was no gratuitous transfer, she made no gift. A long line of cases echoes this principle. *See, e.g., Turman v. Commissioner*, 35 T.C. 1123, 1129 (1961) (holding that a surviving spouse made no gift when she took under her husband's will and thereby gave up her one-half interest in their community property because the value of property she gave up (the one-half interest) was less than what she received in return (a life estate in all the community property)); *Siegel v. Commissioner*, 26 T.C. 743, 747 (1956) (stating on similar facts that "[i]f [the taxpayer] received

more than she surrendered then, of course, no gift has been made"), *aff'd*, 250 F.2d 339 (9th Cir. 1957).

*Id.*, slip op. at 14–15.

We went on to reject several arguments the Commissioner made in resisting this conclusion, *id.*, slip op. at 19–27, as well as the Commissioner's alternative argument that a subsequent sale of the QTIP for promissory notes triggered section 2519(a), *id.*, slip op. at 18–19.

Importantly for these cases, however, while concluding that Sally had made no gift, "[w]e express[ed] no view on whether the other beneficiaries of the Marital Trust could be treated as making a gift to Sally for gift tax purposes." *Id.*, slip op. at 18 n.18.

B.      *Consequences of* Estate of Anenberg *Holding for Cases Now Before Us*

The parties' positions in the Motions now before us are both similar to and different from those we faced in *Estate of Anenberg*.

As in *Estate of Anenberg*, the Commissioner maintains that the implementation of the Nonjudicial Agreement resulted in a gift made by Bruce or, in the alternative, that the implementation of the Nonjudicial Agreement coupled with the subsequent sale of the trust property for promissory notes resulted in a gift made by Bruce. We reject these arguments for the reasons we set out in *Estate of Anenberg*. *See id.*, slip op. at 14–19; *see also id.*, slip op. at 20–27 (addressing the Commissioner's counterarguments). As with respect to Sally in that case, we conclude that Bruce made no gifts to Linda or Peter.[5]

---

[5] In view of this conclusion with respect to Bruce, we (again) need not decide whether the implementation of the Nonjudicial Agreement gave rise to "any disposition" of Bruce's qualifying income interest in the QTIP. *See Estate of Anenberg*, 162 T.C., slip op. at 13–14. For purposes of our analysis we can assume (without deciding) that the commutation of the Residual Trust resulted in a disposition of Bruce's qualifying income interest. Moreover, the analysis with respect to Linda and Peter set out below would not change even if we were to conclude that the transactions at issue did *not* give rise to "any disposition" (and therefore that no transfer under section 2519(a) occurred with respect to Bruce). Accordingly, as in *Estate of Anenberg*, we leave for another day the complicated question of whether implementing the Nonjudicial Agreement gave rise to "any disposition" of Bruce's qualifying income interest for purposes of section 2519(a).

Unlike in *Estate of Anenberg*, however, here the Commissioner also determined deficiencies against the holders of the remainder interests, Linda and Peter. The Commissioner argues that "[w]ith regard to Linda and Peter, there is no [QTIP] tax fiction at work." Resp't's Mem. 72. Rather, he says, "[t]hey received a remainder interest in the Residuary QTIP Trust assets at Clotilde's death." *Id.* The Commissioner observes that "[t]his is a valuable property interest that became part of their estates at that time, and with respect to which they agreed to an immediate transfer to Bruce pursuant to the Nonjudicial Agreement." *Id.* The Commissioner reminds us "that federal gift tax is an excise tax on the transfer of property," and he concludes that "the transfers of Linda['s] and Peter's rights to a pro rata share of the Residuary QTIP Trust assets are taxable gifts." *Id.* He reasons that, "[b]ecause the assets are no longer part of either of their taxable estates and cannot be further transferred by Linda and Peter, they are no longer subject to further transfer taxation therein." *Id.* at 72–73.

The Commissioner's argument is well taken. Under the "gratuitous transfer" framework described in *Estate of Anenberg*, Linda and Peter plainly made gratuitous transfers. Before the implementation of the Nonjudicial Agreement, they held valuable rights, i.e., the remainder interests in the QTIP.[6] After the implementation of that agreement, which required their consent, Linda and Peter had given up those valuable rights by agreeing that all of the Residuary Trust assets would be transferred to Bruce. And they received nothing in return. By giving up something for nothing, Linda and Peter engaged in quintessential gratuitous transfers and are therefore subject to gift tax under sections 2501 and 2511. *See Estate of Anenberg*, 162 T.C., slip op. at 14–15; *see also Jewett v. Commissioner*, 455 U.S. 305, 310 (1982) ("Our expansive reading of the statutory language [of section 2501] in *Smith* [*v. Shaughnessy*, 318 U.S. 176, 180 (1943)] unquestionably encompasses an indirect transfer, effected by means of a disclaimer, of a contingent future interest in a trust.").[7]

---

[6] To review, the QTIP assets that funded the Residuary Trust initially were worth approximately $54 million and had more than doubled in value by 2016. While Bruce was entitled to the income generated by the assets during his life, he could receive distributions of principal only to provide for his "health, maintenance and support in his accustomed manner of living." The remainder interests belonged to Linda and Peter.

[7] Given the procedural posture of the case, we do not of course decide here the value of the gifts Linda and Peter made to Bruce. That factual issue remains open for decision in future proceedings.

IV.    *Petitioners' Arguments*

Petitioners' efforts to refute the conclusion that Linda and Peter made gifts to Bruce are unavailing.

A.    *Scope of the QTIP Fiction*

We begin with a preliminary point.  The fundamental premise of petitioners' argument seems to be that the QTIP fiction should apply with equal force to the children, not just the surviving spouse.  And, moreover, that the fiction that the surviving spouse owns the property persists for all purposes of the Code.  In essence, in petitioners' view, for gift tax purposes, the children simply had nothing that they could give away.  Petitioners' arguments would have us apply the QTIP fiction too broadly, as the Commissioner points out.

We have already recognized that the QTIP fiction does not apply for all purposes.  *See Estate of Mellinger v. Commissioner*, 112 T.C. 26, 36–37 (1999) ("Neither section 2044 nor the legislative history indicates that decedent should be treated as the owner of QTIP property for [purposes of aggregating stock ownership in connection with valuing the stock].").  This principle is entirely consistent with the function of the QTIP regime—"namely, not eliminating or reducing tax on the transfer of marital assets out of the marital unit, but rather permitting deferral [of that transfer tax] until the death of or gift by the surviving spouse." *Estate of Anenberg*, 162 T.C., slip op. at 20.  All the provisions through which Congress enacted the QTIP regime are focused on deferring, imposing, and collecting that single tax.  *See, e.g.*, I.R.C. § 2056(b)(7) (permitting through an estate tax deduction deferral of the transfer tax on assets leaving the marital unit); I.R.C. § 2519 (triggering the deferred transfer tax if the surviving spouse makes an inter vivos gift of a portion of the QTIP); I.R.C. § 2044 (triggering the deferred transfer tax on the QTIP when the surviving spouse dies); I.R.C. § 2207A (providing rules for the collection of the deferred transfer tax once it is triggered).  Again, the focus of these rules is on the transfer of marital assets outside the marital unit.  As the Commissioner points out, they say nothing about, and do not apply to, transactions that transferees outside the marital unit, such as Linda and Peter, may undertake with respect to their own interests in QTIP.

In short, Linda and Peter cannot invoke the QTIP fiction, which applies for the limited purpose of determining Bruce's transfer tax

liability when marital assets leave the marital unit, to escape transfer tax on their own transactions.

### B. *Reciprocal Gifts*

As noted above, petitioners' primary position is that Bruce, Linda, and Peter made reciprocal gifts that offset each other. The position is unpersuasive.

Petitioners' argument is based on the premise that "the commutation of the Trust results in a deemed gift, for federal gift tax purposes, of the remainder interest in the Trust assets from Bruce to Linda and Peter under Section 2519 of the Code," as the Nonjudicial Agreement puts it. But this premise is incorrect. As we have already held (in concluding that Bruce made no gifts), by its terms, section 2519(a) does not deem a gift; it merely deems a transfer. Thus, there are no deemed gifts from Bruce to Linda and Peter to offset the very real gifts from Linda and Peter to Bruce.[8]

Nor did Linda and Peter ever actually obtain anything of value from Bruce as a result of the Nonjudicial Agreement. Under state law, they already had the remainder rights with respect to the Residuary Trust.[9] And a deemed transfer under section 2519(a) added nothing to their bundle of sticks. In other words, no matter the outcome under section 2519(a), nothing of value passed to Linda and Peter that offset the value they gave up by relinquishing their remainder rights.

### C. *Bruce's Existing Interest in the QTIP*

Petitioners also argue that Linda and Peter cannot have transferred anything to Bruce because, under the QTIP regime, Bruce was already deemed to own all of the QTIP. The argument is misplaced

---

[8] In view of this conclusion, we need not decide whether *United States v. Estate of Grace*, 395 U.S. 316 (1969), and Revenue Ruling 69-505, 1969-2 C.B. 179, bear the reading petitioners give to those authorities. *See Stromme v. Commissioner*, 138 T.C. 213, 218 n.8 (2012) (observing that we should decide only what is needed to dispose of the case before us); *see also PDK Labs Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) (same).

[9] For rules governing the allocation of principal and income for purposes of the Residuary Trust, see the Principal and Income Act, 2002 Wash. Legis. Serv. ch. 345 (West) (codified at Wash. Rev. Code Ann. ch. 11.104A (West 2003)), *repealed and replaced by* Uniform Fiduciary Income and Principal Act, 2021 Wash. Legis. Serv. ch. 140, §§ 2101–2809 (West) (codified at Wash. Rev. Code Ann. ch. 11.104B (West 2022)).

as well. Any rights Bruce may have been deemed to hold because of the QTIP fiction do not negate the very real interests Linda and Peter held because of Clotilde's will. And their decision to transfer those rights to Bruce gives rise to the potential gift tax consequences here. The focus of the analysis is whether Linda and Peter transferred valuable rights gratuitously. That Bruce may have already been deemed to hold those rights for purposes of determining *his* transfer tax liability is of no moment. As the governing regulations note:

> The gift tax is not imposed upon the receipt of the property by the donee, nor is it necessarily determined by the measure of enrichment resulting to the donee from the transfer, nor is it conditioned upon ability to identify the donee at the time of the transfer. On the contrary, the tax is a primary and personal liability of the donor, is an excise upon his act of making the transfer, is measured by the value of the property passing from the donor, and attaches regardless of the fact that the identity of the donee may not then be known or ascertainable.

Treas. Reg. § 25.2511-2(a).

The Commissioner correctly points out that "[i]f Linda and Peter were to transfer their remainder interests to a third party, the transfers would clearly be a gift and Petitioners admit as much." Resp't's Resp. to Pet'r's Resp. to Ct. Order 20–21, Dec. 22, 2023 (citing Pet'r's Resp. to Ct. Order 14 n.19, Nov. 27, 2023). That Bruce was the recipient of Linda's and Peter's largesse does not change this conclusion.

### D. *Economic Positions of the Parties*

Petitioners also maintain no gift occurred because the economic positions of the parties were unchanged. That is simply not so. Before the implementation of the Nonjudicial Agreement, despite the QTIP fiction, Bruce did not own the assets of the Residuary Trust outright and could not do with them what he wished. After the implementation of the Nonjudicial Agreement, he did and could.

On the other hand, before the implementation of the Nonjudicial Agreement, Linda and Peter had remainder rights with respect to the Residuary Trust. After, they did not. Of course, under the terms of Clotilde's will, Bruce could have decided in his own will to reduce one of

the children's share significantly.[10] But the Nonjudicial Agreement reduced both children's rights with respect to the Residuary Trust to nothing. And, as far as we can tell, going forward nothing in the Nonjudicial Agreement precluded Bruce from excluding Linda and Peter from a future will altogether. Moreover, while trusts established for their benefit (the Children's Trusts) eventually acquired assets transferred to Bruce from the Residuary Trusts, that was in exchange for issuing secured promissory notes to Bruce. Thus, the Children's Trusts would have to pay (albeit in the future) for the assets they received. Nothing came to those trusts simply as a result of the provisions of Clotilde's will (as might have occurred in the absence the Nonjudicial Agreement).

In short, the economic positions of the parties were indeed altered by the Nonjudicial Agreement.

V.     *Conclusion*

In view of the foregoing, petitioners' Motion for Summary Judgment will be granted to the extent it asks us to conclude that Bruce did not make any gifts as a result of the transactions at issue. But that Motion will be denied to the extent it asks us to conclude that Linda and Peter did not make any gifts as a result of the transactions at issue either.

Relatedly, the Commissioner's Motion for Partial Summary Judgment will be granted to the extent that it asks us to conclude that Linda and Peter made gifts as a result of the transactions at issue. But that Motion will be denied to the extent it asks us to conclude that Bruce made gifts as a result of the transactions at issue.

We have considered all of the parties' arguments and, to the extent not discussed above, conclude they are irrelevant, moot, or without merit.[11]

---

[10] The import (if any) of these terms for the value of Linda's and Peter's remainder rights remains to be decided. *See supra* note 7.

[11] The analysis in the Opinion Concurring in the Result misreads the holding of *Estate of Anenberg* and our holdings in these cases. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023) (An opinion that concurs only in the result "is generally not the best source of legal advice on how to comply with the majority opinion."). And the analytical path it offers is

17

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

KERRIGAN, FOLEY, BUCH, NEGA, PUGH, ASHFORD, URDA, COPELAND, JONES, GREAVES, MARSHALL, and WEILER, *JJ.*, agree with this opinion of the Court.

HALPERN, *J.*, concurs in the result.

---

neither more straightforward nor sounder than the one we adopt. *See* concurring op. pp. 18, 29–30.

HALPERN, *J.*, concurring in the result: While I agree with the results the majority reaches, I believe an alternative analysis to reach those results would have been preferable. The majority's analysis raises questions it does not adequately address. I therefore offer an alternative analysis that avoids those questions and, in my judgment, provides a sounder basis for the Court's conclusions.

I.     *Questions Raised by the Majority's Analysis*

A.     Estate of Anenberg*'s Alternative Rationales*

The majority suggests that its conclusion that "Bruce . . . made no gifts" can be reached by "[a]pplying the principles set out in *Estate of Anenberg*." Op. Ct. p. 3. In *Estate of Anenberg v. Commissioner*, No. 856-21, 162 T.C. (May 20, 2024), we addressed the consequences under section 2519(a) of the distribution to a surviving spouse of all the property in two QTIP trusts upon the trusts' termination. We concluded that, even if the termination of the trusts and the distribution to the surviving spouse of the trust property effected a "disposition," within the meaning of section 2519(a), the resulting deemed transfer was not a taxable gift.

We offered two alternative rationales for our conclusion in *Estate of Anenberg* that any deemed transfer under section 2519(a) would not have been a gift. First, Sally Anenberg, the surviving spouse, "received free and clear the underlying property that section 2056(b)(7) deemed her to have received from Alvin [her deceased husband] to start with and with respect to which (we assume) section 2519(a) deemed her to have transferred remainder interests upon the termination of the Marital Trusts." *Estate of Anenberg*, 162 T.C., slip op. at 15.

We observed that "[a] long line of cases echoes th[e] principle" that transfers that are not gratuitous are not gifts. *Id.* We cited two cases as examples: *Siegel v. Commissioner*, 26 T.C. 743 (1956), *aff'd*, 250 F.2d 339 (9th Cir. 1957), and *Turman v. Commissioner*, 35 T.C. 1123 (1961). Each case addressed a situation in which a wife gave up her share of community property to take under her deceased husband's will. The husband's will provided for the creation of a trust in which the wife received a life interest. The trust was funded with the couple's community property. By taking under her husband's will, the wife gave up the remainder interest in her share of the community property. And she received a life interest in the property that came from her husband. In each case, we concluded that the wife made a gift only to the extent

that the value of what she gave up exceeded the value of what she received. We viewed what she received as consideration for what she gave up. As the U.S. Court of Appeals for the Ninth Circuit explained in affirming our decision in *Siegel*: "When the husband makes a testamentary disposition of more than half of the community property and the wife chooses to take under the will, the half interest in the estate which she surrenders is a contract supported by adequate consideration." *Commissioner v. Siegel*, 250 F.2d at 345.

Our opinion in *Estate of Anenberg*, 162 T.C., slip op. at 17, invoked section 2512 as "further confirm[ation]" that what Sally received in exchange for any deemed transfer under section 2519(a) made that transfer not gratuitous. Section 2512(b) provides: "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift . . . ." We noted that "[a] necessary corollary" of the rule stated in section 2512(b) "is that no taxable gift results to the extent the value of transferred property is equal to or less than the value of the consideration received." *Estate of Anenberg*, 162 T.C., slip op. at 17. "[T]o the extent section 2519 viewed Sally as transferring away the interests in property that the QTIP regime treated her as holding in the first place," we reasoned, "it is hard to understand why Sally would not have received full and adequate consideration in return when she was also at the receiving end of the transfer of the property unencumbered." *Id.*

As an alternative rationale for our conclusion that any deemed transfer by Sally under section 2519(a) was not a taxable gift, we observed that, under Treasury Regulation § 25.2511-2, "any gift by Sally would appear to be viewed as wholly incomplete." *Estate of Anenberg*, 162 T.C., slip op. at 16. "[E]ven if we deem Sally to have transferred the remainder interests," we noted, "no value would appear to have passed from her to anyone else because she ultimately received all the property held by the Marital Trusts as part of the same transaction, leaving nothing on which the 'excise' could operate." *Id.* (citing Treas. Reg. § 25.2511-2(a)). "[A]fter the termination of the Marital Trusts," we observed, Sally "had full control over the disposition of the assets previously held in trust." *Id.* Sally was in the same position as if she had reserved and "promptly exercised" a "power to revest title in the property in herself." *Id.*, slip op. at 17.

*Estate of Anenberg*'s "adequate and full consideration" rationale and its "wholly incomplete gift" rationale are necessarily alternatives to

each other. Either rationale could justify the conclusion that any deemed transfer by Sally under section 2519 was not a taxable gift. But they cannot *both* support that conclusion simultaneously. Sally may have made a complete transfer for which she received adequate and full consideration. Or she might have made a wholly incomplete transfer for which she was not entitled to consideration. She cannot have done both at the same time.

In *Estate of Anenberg*, we had no reason to choose between the alternative rationales we offered. Either rationale supported our resolution of the only issue in that case.

B.      *Implications of* Estate of Anenberg*'s Alternative Rationales for Linda and Peter*

The cases now before us, however, raise an additional issue: whether Linda and Peter made taxable gifts to their father when they allowed him to receive the shares of Residuary Trust property that would otherwise have gone to them. Resolving that issue requires us to choose between *Estate of Anenberg*'s alternative rationales. Even if the choice of rationales does not affect our resolution of the additional issue now before us, that choice will at least affect the relevant analysis.

Under *Estate of Anenberg*'s wholly incomplete gift rationale, we could readily conclude that Linda's and Peter's transfers to Bruce were taxable gifts. Bruce's deemed transfer under section 2519(a) could not be viewed as having provided Linda and Peter with adequate and full consideration—regardless of the scope of the fiction underlying the QTIP rules—if Bruce's deemed transfer were wholly incomplete.

The majority's discussion of the scope of the QTIP fiction, however, suggests that it relies primarily on *Estate of Anenberg*'s adequate and full consideration rationale. Linda's and Peter's transfers to Bruce provided him with adequate and full consideration for any deemed transfer by him under section 2519(a), but his deemed transfer cannot be viewed as having provided adequate and full consideration for Linda's and Peter's transfers to him. As the majority writes: "Linda and Peter cannot invoke the QTIP fiction" because that fiction (that Bruce owned, and could transfer, the interests in the QTIP other than his qualifying income interest) "applies for the limited purpose of determining Bruce's transfer tax liability when marital assets leave the marital unit." Op. Ct. pp. 13–14. Linda and Peter thus cannot "escape transfer tax" on their "very real" transfers to Bruce by claiming that a

deemed transfer by Bruce under section 2519(a) provided them with adequate and full consideration. Op. Ct. p. 14.

The majority, as I understand it, thus treats the same transfers differently in determining the transfer tax consequences for the transferors (Linda and Peter) and the transferee (Bruce). Linda's and Peter's "very real" transfers to Bruce were, from his perspective, consideration for any deemed transfer he may have made under section 2519(a) but, from Linda's and Peter's perspective, their transfers were wholly gratuitous and thus taxable gifts.[1] I question whether the bounds of the QTIP fiction are so clearly delineated as to justify that differential treatment.

C.    *The Scope of the QTIP Fiction*

As the majority observes, Linda and Peter did not "actually obtain anything of value from Bruce as a result of the Nonjudicial Agreement." Op. Ct. p. 14. In particular, any "deemed transfer [by Bruce] under section 2519(a) added nothing to [Linda's and Peter's] bundle of sticks." *Id.* Therefore, "nothing of value passed to Linda and Peter that offset the value they gave up by relinquishing their remainder rights." *Id.* I agree with all of that. Given that Bruce provided "nothing of value" to Linda and Peter, how can they be viewed as having provided consideration for nothing? Precisely because Linda and Peter received nothing of value from Bruce, they had no cause to provide him consideration.

*Estate of Anenberg*'s adequate and full consideration rationale thus posits that a surviving spouse can receive consideration for a transfer of property that the surviving spouse does not actually own—a deemed transfer that provides nothing of value to any transferee. That proposition lacks a clear statutory basis. Section 2519(a) requires that a "disposition" of a surviving spouse's qualifying income interest in QTIP "be treated as a transfer of all interests in [the QTIP] other than the

---

[1] Linda and Peter did not actually transfer any of the Residuary Trust property to their father. Instead, upon its termination, the trust distributed all its property directly to Bruce. Under a longstanding principle of tax law, however, if a taxpayer entitled to a payment directs the payor to make the payment to a third party, the taxpayer constructively receives the payment and then transfers the property so received to the ultimate recipient. *See, e.g.*, *Old Colony Tr. Co. v. Commissioner*, 279 U.S. 716 (1929). The majority, in describing Linda and Peter as having made "very real" transfers to their father, apparently accepts the application of that principle in the present cases. So do I.

qualifying income interest." But neither section 2519(a) nor any of the other provisions addressing QTIP expressly provide that the surviving spouse can be treated as having received consideration for a deemed transfer of interests in property that the surviving spouse does not actually own. The adequate and full consideration rationale thus extends the QTIP fiction beyond what the relevant statutory provisions expressly provide.

How far, then, does the QTIP fiction extend *beyond* the express terms of the relevant statutory provisions? The majority views petitioners as asking that we "apply the QTIP fiction too broadly." Op. Ct. p. 13. It describes petitioners as contending that "the fiction that the surviving spouse owns the [QTIP outright] persists for all purposes of the Code." *Id.* If that is what petitioners contend, and if that contention were correct, Linda and Peter could not have made taxable gifts of any interest in the QTIP. If Bruce were treated for all purposes as owing the QTIP outright, as the majority says, it would follow that Linda and Peter "simply had nothing [that is, no interest in the QTIP] that they could give away." *Id.*

But the majority mischaracterizes petitioners' argument, knocking down a straw man. Petitioners do *not* argue that Bruce has to be treated as the owner of all of the Residuary Trust property for all purposes relevant under the Code. As the majority acknowledges, petitioners "admit" that gratuitous transfers by Linda and Peter to a third party of their remainder interests in the Residuary Trust would be taxable gifts. Op. Ct. p. 15.

Similarly, the majority seizes on petitioners' use of what I would view as an infelicitous label to reject petitioners' "primary position." Op. Ct. p. 14. Petitioners sometimes refer to the transfers between Bruce and his children as "reciprocal gifts."

The phrase "reciprocal gift" is a misnomer. Offsetting, reciprocal transfers are not gifts. I am unaware of any "reciprocal gift" doctrine.

The authorities petitioners cite when they refer to reciprocal gifts or transfers, *United States v. Estate of Grace*, 395 U.S. 316 (1969), and Revenue Ruling 69-505, 1969-2 C.B. 179, deal with the "reciprocal *trust*" doctrine, which applies when each of two settlors creates a trust for the other's benefit. To prevent the avoidance of section 2036, which includes in a decedent's estate property transferred subject to a retained life

estate, the courts may treat each settlor as the grantor of the other's trust.

The reciprocal trust doctrine has no bearing on the present cases. The Residuary Trust is the only trust relevant to the issues before us. We have no occasion to "uncross" transfers to reciprocal trusts.

Thus, the majority sees no need to "decide whether *United States v. Estate of Grace* . . . and Revenue Ruling 69-505 . . . bear the reading petitioners give to those authorities." Op. Ct. p. 14 n.8. As I understand petitioners, they rely on Revenue Ruling 69-505 only for the general proposition that offsetting transfers result in a taxable gift only to the extent that the value of one transfer exceeds the other. (The ruling illustrates how that principle applies to the creation of a trust by joint tenants.)

I agree with the majority that, if any deemed section 2519(a) transfer is not a gift, that transfer and Linda's and Peter's transfers cannot be reciprocal gifts, whatever that might mean. But I would not dismiss petitioners' primary position on the basis of their occasional use of an anomalous phrase. While petitioners sometimes refer to reciprocal gifts, they more often describe Bruce, Linda, and Peter as having made "reciprocal transfers." They argue that Bruce made a deemed transfer under section 2519(a) and that that transfer and Linda's and Peter's transfers to him offset so that none of the transfers were taxable gifts.

The majority does not dispute that any deemed transfer by Bruce under section 2519(a) and Linda's and Peter's transfers to him were of equal value. That point is obvious: The offsetting transfers were of the same property (all of the interests in the Residuary Trust property other than Bruce's qualifying income interest). Instead, the majority recognizes the offsetting transfers only for the purpose of determining Bruce's transfer tax liability and not for the purpose of determining the transfer tax owed by Linda and Peter. It justifies that selective recognition of offsetting transfers by perceived limits on the scope of the QTIP fiction.

Returning to that question, for petitioners to prevail in their claim that Linda's and Peter's transfers to Bruce were not gifts because they were made for adequate and full consideration, petitioners need not establish that Bruce must be treated, for all purposes, as the owner of all the interests in the Residuary Trust property. Instead, their position can rest on a simple point of transactional consistency. If Linda's and

Peter's transfers to Bruce provided him with adequate and full consideration for his deemed transfer under section 2519(a), then their transfers cannot have been gratuitous. Transfers that, from Bruce's perspective, were consideration paid *to him* should be viewed, from Linda's and Peter's perspectives, as consideration paid *by them*.

II. *An Alternative Analysis*

A. *Following* Estate of Anenberg*'s Wholly Incomplete Gift Rationale*

Questions about how far beyond the express terms of the relevant statutes the QTIP fiction extends could be avoided by choosing *Estate of Anenberg*'s wholly incomplete gift rationale over its adequate and full consideration rationale. Whether the QTIP fiction can, in some instances, treat a surviving spouse as receiving consideration for a deemed transfer of interests in property that the surviving spouse does not actually own, that treatment is inappropriate when the deemed transfer is, under the principles of Treasury Regulation § 25.2511-2, a wholly incomplete gift. A transferor who makes a wholly incomplete transfer is not entitled to any consideration. And any deemed transfer by Bruce under section 2519(a) would properly be characterized as wholly incomplete because, after that transfer, he owned all of the property he would be deemed to have transferred. Section 2519(a), if applicable, would treat Bruce as having transferred "all interests in [the Residuary Trust] property other than [his] qualifying income interest." But after that deemed transfer, Bruce owned *all* the interests in the Residuary Trust property. As noted above, if any deemed transfer by Bruce under section 2519(a) was a wholly incomplete gift, it cannot have provided adequate and full consideration to Linda and Peter for their transfers to him.

The wholly incomplete gift analysis, however, may prove too much. It calls into question whether a disposition of Bruce's qualifying income interest in the Residuary Trust property occurred in the first instance. Bruce cannot have disposed of all or part of his qualifying income interest in the Residuary Trust property when he was left owning all the interests in that property.

B. *No Disposition Under Section 2519(a)*

Citing a 1981 edition of *Webster's Third New International Dictionary*, respondent advises us that "[t]he ordinary meaning of the noun 'disposition' is a placing elsewhere, a giving over to the care or

possession of another, or a relinquishing; the transfer of property from one to another (as by gift, barter, or sale or by will) or the scheme or arrangement by which such transfer is effected."

Accepting respondent's proposed definition, Bruce obviously did not "plac[e]" his qualifying income interest "elsewhere." Both before and after the commutation of the Residuary Trust and the distribution of all the trust property to him, Bruce was solely entitled to the income produced by the trust property. Similarly, Bruce did not "giv[e] over" his qualifying income interest "to the care or possession of another." He did not "transfer" his qualifying income interest "to another," by "gift, barter, . . . sale . . . by will," or any other means. Therefore, whether the distribution of all the Residuary Trust property to Bruce effected a "disposition" of his qualifying income interest, within the ordinary meaning of the word, depends on whether he can be viewed as having "relinquished" that interest.

That Bruce could be viewed as having relinquished his beneficial interest in the Residuary Trust is of no moment. By its terms, section 2519(a) applies to "any disposition of all or part of a qualifying income interest in property to which this section applies." In the present cases, the property to which section 2519 applies is the property for which Clotilde's estate was allowed a deduction "under section 2056 by reason of subsection (b)(7) thereof." § 2519(b)(1). In other words, section 2519 applies to the property that, under the terms of Clotilde's will, funded the Residuary Trust. Bruce's beneficial interest in the trust is not the property to which section 2519 applies. Therefore, the question before us is not whether Bruce disposed of his beneficial interest in the trust but whether he disposed of his qualifying income interest in the trust property. *Cf. Estate of Anenberg*, 162 T.C., slip op. at 13 n.14 (describing Sally, the surviving spouse, as having relinquished her interests in the Marital Trusts).

The proper framing of the question makes the answer clear: After the commutation of the Residuary Trust and the distribution of all the trust property to Bruce, he owned *all* the interests in the property. He might have relinquished his beneficial interest in the Residuary Trust, but he cannot have relinquished *any* interest in the property held in trust.

I accept that the distribution of all the Residuary Trust property to Bruce terminated his qualifying income interest for life. The right to income from property is one of the rights inherent in fee simple

ownership. But the right to income inherent in fee simple title is not limited to the owner's life. Therefore, if "termination" were an acceptable synonym for "disposition," the distribution of the Residuary Trust property to Bruce could be viewed as a disposition of his qualifying income interest for life.

In Revenue Ruling 98-8, 1998-1 C.B. 541, 542, the Internal Revenue Service took the position that "[t]he term 'disposition,' as used in § 2519, applies broadly to circumstances in which the surviving spouse's right to receive the income is relinquished or otherwise terminated, by whatever means." The ruling purports to rely on H.R. Rep. No. 97-201, at 161 (1981), *as reprinted in* 1981-2 C.B. 352, 378, which states that property subject to a QTIP election is subject to transfer taxes if the surviving spouse "disposes (either by gift, sale, or otherwise) of all or part of the qualifying income interest." The committee report does not support the broad reading that Revenue Ruling 98-8 gives to the term "disposition." It indicates only that the term is not limited to gifts and sales. It does not follow that any termination of a qualifying income interest, by any means, is a disposition.

I thus conclude that, while the distribution of all the Residuary Trust property to Bruce *terminated* his qualifying income interest in the property, he did not *relinquish* that right. The termination of Bruce's qualifying income interest in the Residuary Trust property occurred without Bruce's having surrendered his right to the income from the trust property. He simply accepted the interests in the property that he had not beneficially owned before the commutation of the trust. He did not give up or surrender any interest in the trust property. Acceptance of additional rights to property that add to those previously owned cannot be viewed as a relinquishment of the previously owned rights. Because Bruce owned the trust property outright after the commutation of the trust and the distribution of all trust property to him, he cannot be viewed as having relinquished any interest in the property.

The conclusion that the distribution of all the Residuary Trust property to Bruce did not effect a disposition of his qualifying income interest in the trust property is fully consistent with the policies underlying the marital deduction rules in general and the QTIP rules in particular. The trust property would have been included in Bruce's gross estate under section 2033 unless consumed or transferred by inter

vivos gift.[2] In that event, section 2033 would have served the role that would otherwise have been served by section 2044(a).[3] It is thus unobjectionable that Bruce's acquisition of full ownership of the Residuary Trust property terminated his qualifying income interest in that property and negated the application of section 2044(a). Section 2519(a) need not serve as a backstop to section 2044(a).[4]

If the Residuary Trust had been commuted in accordance with the terms of Clotilde's will, with each beneficiary receiving a share of the trust assets with a value equal to his or her interest in the trust, the trust's termination would have effected a disposition of Bruce's qualifying income interest in the trust assets. In that event, Bruce would have relinquished any interest in the trust assets distributed to Linda or Peter. As explained above, however, the policies of the marital deduction rules would not justify ignoring that, pursuant to the Nonjudicial Agreement, Linda and Peter allowed their father to receive the shares of trust property that would otherwise have been distributed to them.[5]

---

[2] Section 2033 includes in a decedent's gross estate "the value of all property to the extent of the interest therein of the decedent at the time of his death."

[3] Section 2044(a) requires the value of QTIP in which a surviving spouse has a qualifying income interest to be included in his gross estate.

[4] In fact, Bruce transferred to the Children's Trusts, in exchange for promissory notes, at least some, and perhaps substantially all, of the property he received from the Residuary Trust. To the extent that the value of the property Bruce transferred exceeded the value of the notes, the transfer was a taxable gift. To the extent that the value of the transferred property did not exceed the value of the notes, the notes simply replaced the property for which Bruce received them, resulting in no diminution in Bruce's estate.

[5] Respondent argues that section 2 of the Nonjudicial Agreement effected "two discrete transactions." First, "Bruce, Linda, and Peter each received a right to a share of the trust assets in the form of a terminating distribution." And second, Linda and Peter transferred to Bruce "their right to receive their terminating distributions." Respondent would have us give "independent significance" to those two transactions. Even if section 2 of the Nonjudicial Agreement were viewed as effecting two transactions, those transactions were not independent. They were effected by a single provision of a single agreement. As noted in the text, the policies of the relevant statutory provisions do not require viewing the transactions as separate, finding a disposition of Bruce's qualifying income interest by viewing the first step by itself, without taking into account the effects of the second step. *Cf. Estate of Anenberg*, 162 T.C., slip op. at 26–27 ("In analyzing the tax consequences of the deemed transfer section 2519 contemplates, we cannot ignore that, as part of the same transaction, Sally in fact wound up with the unencumbered Al-Sal shares."). That said, viewing

Under their primary position, consistent with their reporting, petitioners accept that the Bruce made a section 2519 disposition of his qualifying income interest in the Residuary Trust assets. They contend that "the fair market value of Bruce's deemed § 2519 transfer is offset by Linda's and Peter's simultaneous 'transfer' of the same assets to Bruce."

But petitioners also advance an alternative argument. They question how Bruce can be viewed as having "relinquished anything as a result of the NJA [Nonjudicial Agreement], including a 'qualifying income interest' in the assets formerly held in the Residuary Trust, since he was entitled to all of the income from those assets both before and after the execution of the NJA." "If Bruce did not relinquish his income interest in the properties of the Residuary Trust," they observe, "then § 2519 has not been triggered."

Petitioners invoke Treasury Regulation § 25.2519-1(e) in support of the conclusion that Bruce did not dispose of his qualifying income interest in the Residuary Trust property. Treasury Regulation § 25.2519-1(e) provides: "The exercise by any person of a power to appoint [QTIP] to the donee spouse is not treated as a disposition under section 2519, even though the donee spouse subsequently disposes of the appointed property."[6]

As explained above, Bruce did not relinquish any interest in the Residuary Trust property and thus cannot be viewed as having disposed of his qualifying income interest in the property. But I agree with petitioners that Treasury Regulation § 25.2519-1(e) provides further support for that conclusion. The commutation of the Residuary Trust and the distribution of all trust property to Bruce had the same effect as the exercise of a power to appoint the Residuary Trust property to Bruce.

Respondent contends that any analogy of the transactions in issue to the exercise of a power of appointment fails both factually and

---

the steps as part of a single plan does not justify collapsing them and thus disregarding the constructive transfers from Linda and Peter to Bruce that resulted from their agreement to allow their father to receive their shares of the Residuary Trust property.

[6] A surviving spouse does not hold a qualifying income interest for life in property if any person "has a power to appoint any part of the property to any person other than the surviving spouse." § 2056(b)(7)(B)(ii)(II). A power to appoint the property to the surviving spouse, however, does not disqualify the surviving spouse's qualifying income interest for life. Treasury Regulation § 25.2519-1(e) simply draws out the obvious implication of section 2056(b)(7)(B)(ii)(II).

legally. As a factual matter, he observes, "the parties . . . structured their transaction as a commutation and termination of the Residuary QTIP Trust and not as the exercise of a power of appointment." As a legal matter, Clotilde's will did not give anyone an unlimited "power to appoint all the Residuary QTIP Trust assets to Bruce."

I agree that Bruce did not actually receive the Residuary Trust assets by exercise of a power of appointment. Therefore, Treasury Regulation § 25.2519-1(e) does not apply to the transactions in issue. Nonetheless, the regulation provides further support for a conclusion that can readily be reached on the basis of the statutory text alone: Because the exercise of a power of appointment in Bruce's favor would not have been a disposition, the transactions effected by section 2 of the Nonjudicial Agreement should not have effected a disposition either.

III.    *Conclusion*

If the commutation of the Residuary Trust and the distribution of all trust property to Bruce did not effect a "disposition," within the meaning of section 2519(a), of Bruce's qualifying income interest in the Residuary Trust property, then Bruce cannot be treated under that section as having transferred all the interests in that property other than his qualifying income interest. Linda's and Peter's constructive transfers to Bruce cannot have provided adequate and full consideration to Bruce for a transfer he did not make. If section 2519(a) did not apply, we would have no occasion to impose asymmetrical treatment on a single exchange, treating Linda's and Peter's constructive transfers to Bruce as, simultaneously, (1) adequate and full consideration to him for a deemed transfer by him to Linda and Peter, and (2) wholly gratuitous, and thus taxable gifts by them to him. If Bruce made no deemed transfer under section 2519(a) to Linda and Peter, then, as the majority concludes, he made no taxable gifts to them, and their "very real" transfers to him stand alone as taxable gifts.

Again, concluding that Bruce made no section 2519(a) disposition of his qualifying income interest in the Residuary Trust property, in my judgment, provides a sounder basis for the conclusions the majority reaches. The analysis I suggest does not depend on treating a surviving spouse as receiving consideration for a deemed transfer for property he does not actually own—a transfer that is entirely a fiction created by the QTIP rules. Moreover, that analysis does not depend on treating a single exchange differently from the perspective of the transferors and the transferee. The majority views as "complicated" the "question of

whether implementing the Nonjudicial Agreement gave rise to 'any disposition' of Bruce's qualifying income interest for purposes of section 2519(a)." Op. Ct. p. 11 n.5. I do not share the majority's reluctance to answer that question. Instead, I view the questions the majority takes on as more complicated than the disposition question. Concluding that the implementation of the Nonjudicial Agreement did not effect a disposition of Bruce's qualifying income interest provides a more straightforward justification for the conclusions that Bruce did not make a taxable gift but Linda and Peter made taxable gifts to him.